UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| Carl Butkus, *on behalf of himself and all others similarly situated*,<br><br>          Plaintiff,<br>    v.<br><br>Newsmax Media, Inc.<br><br>          Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Carl Butkus (hereinafter "Plaintiff"), on behalf of himself and all others similarly situated, brings this Class Action Complaint against Defendant Newsmax Media, Inc. as follows:

**INTRODUCTION**

1.      Plaintiff brings this class action for damages resulting from the illegal actions of Defendant Newsmax Media, Inc. ("Defendant" or "NewsMax").  Defendant placed repeated telemarketing text messages to Plaintiff's telephones – over Plaintiff's requests for Defendant to stop – in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059(5), thereby invading Plaintiff's privacy.

2.      Defendant is an American for-profit media company that operates, *inter alia,* a cable and broadcast television channel and a website Newsmax.com.[1] It advertises via an

---

[1] In a recent press release, Newsmax announced that it " is seeking a Public Offering with a planned listing on the New York Stock Exchange under the symbol 'NMAX' later in 2025" and the closing of its offering of Series B Preferred Stock which "exceeded its initial target of $150 million with the Company closing last week on its maximum offering amount with gross proceeds of $225 million, before the deduction of placement agent fees and other offering expenses." https://www.businesswire.com/news/home/20250303015695/en/Newsmax-Closes-225-Million-Preferred-Offering-Public-Offering-Preparation-Continues (last visited March 4, 2025).

aggressive telemarketing campaign where it repeatedly sends text messages over the messaged party's objections.

3. Newsmax placed repeated telemarketing text messages encouraging Plaintiff to watch its news programming and visit its website to pay for subscription-based services after Plaintiff told it to "STOP":




4. This action seeks to certify the following two classes:

**Internal Do Not Call List Class**: All persons within the United States who from four years prior to the filing of this action (1) received two or more text messages from Newsmax or anyone acting on Newsmax's behalf, (2) within any 12-month period, (3) for the purpose of selling Newsmax's products and/or services, and (4) at least one of those text messages was placed after such person requested that Newsmax stop texting.

**FTSA Class**: All persons within the State of Florida who, (1) were sent a text message from Newsmax or anyone acting on Newsmax's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) had previously communicated to Newsmax that they did not wish to receive Defendant's text messages.

## JURISDICTION

5. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 as this action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* (the "TCPA") and 47 C.F.R. § 64.1200.

6. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the state law claims under the FTSA form part of the same case or controversy as Plaintiffs' claims under the TCPA.

7. The Court has personal jurisdiction over Defendant and the venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant is a Florida business entity with a principal place of business in Boca Raton, Florida.

## PARTIES

8. Plaintiff is an adult individual residing in Margate, Broward County, Florida, and is a "person" as defined by 47 U.S.C. § 153(39).

9. Defendant, Newsmax Media, Inc., is a Florida business entity with a principal place of business at 750 Park of Commerce Drive, Suite 100, Boca Raton, Florida 33487, and is a "person" as defined by 47 U.S.C. § 153(39).

## THE TCPA

10. Enacted in 1991, at 47 U.S.C. § 227, *et seq.*, "Senator Ernest Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991)." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

11. Likewise, the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, was amended in 2021 to further protect consumers from these intrusive nuisance calls by creating a private right of action for do-not-call violations, allowing the recovery of $500 to $1,500 per call in statutory damages.

12. "Unrestricted telemarketing," Congress later determined, "can be an intrusive invasion of privacy." *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

13. "Congress determined [this] federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Id.*

14. In part, the TCPA prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d). The procedures instituted must meet certain minimum standards, including, but not limited to: (1) having a written policy, available on demand, for maintaining a do-no-call list; (2) informing and training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list; (3) recording and honoring do-not-call requests; (4) identifying the caller and person or entity on whose behalf the telemarketing call is being made; (5) applying the do-not-call request to the particular business entity making the call or on whose behalf the call is made; (6) maintaining a record of requests not to receive further telemarketing calls and honoring such for at least five years from the time the request is made. 47 C.F.R. § 64.1200(d).

15. The above requirements are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers. 47 C.F.R. § 64.1200(e); *see also In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14115 (2003) (the FCC has recognized that the TCPA and implementing regulations apply to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]"); *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *6 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024) ("the weight of the case law supports the conclusion that the receipt of text messages can establish an injury under § 227(c)(5).") (collecting cases).

16. To constitute telemarketing, a text message must be "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R.§ 64.1200(f)(12).

17. The FCC—which develops the rules and regulations implementing the TCPA—has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violation." *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, at ⁋13 (1995).

18. The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by DISH Network, LLC et al, for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574 (2013) ("FCC 2013 Ruling")). In addition to formal agency, principles of apparent authority and ratification may also provide a basis for vicarious seller liability for TCPA violations. *FCC 2013 Ruling*, 28 FCC Rcd. at 6548 ⁋28.

19. The FCC has specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15391 (2012) ("*In re SoundBite Communications, Inc.*").

## PLAINTIFF'S FACTUAL ALLEGATIONS

20. At all relevant times, Plaintiff used the 754-XXX-2029 Number for personal and residential purposes.

21. Within the last year Newsmax began sending telemarketing text messages to Plaintiff's 2029 Number. As depicted in the below screenshots, Newsmax's text messages encourage Plaintiff to go to websites operated by Newsmax, including

6

https://www.newsmaxplus.com/, where visitors are directed to pay for either an $49.99 annual subscription to Newsmax or a $4.99 monthly subscription.  Other links, for instance mx/EMYo, lead to a website on "blaylockwellness.com"[2] soliciting visitors to enter their credit card information to pay for a copy of a book called the "The Liver Cure"  written Russell Blaylock and sign up a subscription to "The Blaylock Wellness Report" which will automatically renew "using your credit/debit card on file" for a "$54.95" annual charge. *See, e.g.*:

---

[2] https://w3.blaylockwellness.com/Health/BWR/Offers/BWR-Liver-Cure?dkt_nbr=6F01565yffex






22. None of Newsmax's text messages provided Plaintiff with the ability to opt out of Newsmax's text messages or request that Newsmax stop placing the text messages.

23. On February 19, 2025, Plaintiff messaged "STOP" to Newsmax. In response, Newsmax responded "You have been opted out and will not receive any more messages from

Newsmax." However, Newsmax proceeded to place repeated additional telemarketing text messages to Plaintiff.

24. By messaging asking Newsmax to stop contacting him, Plaintiff terminated any established business relationship that could have existed between the Parties. Indeed, a "subscriber's seller-specific do-not-call request . . . terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i).

25. None of Defendant's messages to Plaintiff's were for an emergency purpose.

26. Plaintiff was damaged by Defendant's unconsented text messages. In addition to using Plaintiff's telephone data, phone storage, and battery life, Plaintiff's privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted text messages, forcing Plaintiff to divert attention away from other activities.

## CLASS ACTION ALLEGATIONS

**A. The Class**

27. Plaintiff brings this case as a class action on behalf of himself and all others similarly situated.

28. Plaintiff represents, and is a members of the following classes (the "Internal Do Not Call List Class" and the "FTSA Class" (collectively the "Classes")):

> **Internal Do Not Call List Class**: All persons within the United States who from four years prior to the filing of this action (1) received two or more text messages from Newsmax or anyone acting on Newsmax's behalf, (2) within any 12-month period, (3) for the purpose of selling Newsmax's products and/or services, and (4) including at least one of those text messages being placed more than 30 days after such person requested that Newsmax stop texting.
>
> **FTSA Class**: All persons within the State of Florida who, (1) were sent a text message from Newsmax or anyone acting on Newsmax's behalf; (2) for the purpose

of soliciting Defendant's goods and/or services, and (2) had previously communicated to Newsmax that they did not wish to receive Defendant's text messages.

29. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the classes but believe the class members number in the thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

### B. Numerosity

30. Upon information and belief, Defendant placed telemarketing and solicitation messages to telephone numbers belonging to thousands of persons throughout the United States where it lacked prior express written consent to place such messages and/or such persons had previously asked Defendant to cease messaging them. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

31. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### C. Common Questions of Law and Fact

32. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

   a. Whether Newsmax's messages constitute "telephone solicitations" or "telemarketing" under the TCPA;

   b. Whether N Newsmax's messages constitute "telephonic sales calls" under the FTSA;

   c. Whether Defendant can meet its burden of showing it obtained prior written consent

       to place each telemarketing message;

   d. Whether Newsmax continued to send telemarketing text messages after being asked to stop;

   e. Whether Newsmax maintains an internal do-not-call list and instructs its employees on how to use the list;

   f. Whether Newsmax had any processes or protocols in place to stop texts to persons who asked that the messages stop;

   g. Whether Newsmax had the required policies and procedures in place to honor do-not-call requests;

   h. Whether Newsmax routinely honors such requests;

   i. Whether Newsmax engaged in abusive telemarketing practices;

   j. Whether Defendant's conduct was knowing and/or willful;

   k. Whether Defendant is liable for damages, and the amount of such damages; and

   l. Whether Defendant should be enjoined from such conduct in the future.

33. The common questions in this case are capable of having common answers. If Plaintiff's claims that Defendant routinely placed telemarketing text messages over requests to stop the messages, is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D. Typicality**

34. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### E. Protecting the Interests of the Class Members

35. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices, and specifically claims under the TCPA. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

### F. Proceeding Via Class Action is Superior and Advisable

36. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

**COUNT I**
**VIOLATIONS OF THE TCPA**
**(47 U.S.C. § 227, et seq. and 47 C.F.R. § 64.1200(d)(3))**
**On Behalf of the Internal Do Not Call List Class**

37. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

38. Plaintiff brings this claim on behalf of himself and the Internal Do Not Call List Class.

39. 47 C.F.R. § 64.1200(d)(3) provides that "No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: . . . Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."

40. The TCPA provides a private right of action to "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations . . . ." 47 U.S.C. § 227(c)(5).

41. Defendant initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

42. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA and 47 C.F.R. § 64.1200(d)(3) by Defendant.

43. Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each text message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

44. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

45. Further, Plaintiff and the Class are also entitled to and do seek a declaration that:

- Defendant violated the TCPA; and

- Defendant initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

**COUNT II**
**Willful Violations of the Telephone Consumer Protection Act,**
**(47 U.S.C. § 227, *et seq.* and 47 C.F.R. § 64.1200(d)(3))**
**On Behalf of the Internal Do Not Call List Class**

46. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

47. Plaintiff brings this claim on behalf of himself and the Internal Do Not Call List Class.

48. Defendant deliberately failed to honor "Stop" requests. Accordingly, Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

49. Each of the aforementioned messages by Defendant constitutes a knowing and willful violation of the TCPA.

50. Plaintiff and the Class are entitled to an award of up to $1,500.00 in statutory damages for each message sent in knowing and willful violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(C).

51. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

52. Further, Plaintiff and the Class are also entitled to and do seek a declaration that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiff and

members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made; and

- It is Defendant's practice and history to place telephone solicitations and telemarketing messages to persons who had previously made a do-not-call request to Defendant.

### COUNT III
### Violation of the FTSA, Fla. Stat. § 501.059(5)
### On Behalf of the FTSA Class

53. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

54. The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer, business, or potential donor … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" Fla. Stat. § 501.059(5).

55. "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" Fla. Stat. § 501.059(1)(i).

56. "Telephonic sales call" is defined as a "…text message … to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" Fla. Stat. § 501.059(1)(j).

57. Black's Law Dictionary defines "service" as "the act of doing something useful for a person or company, usu[ally] for a fee." Black's Law Dictionary 1491 (9th ed.2009). *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1193 (11th Cir. 2010).

58. Newsmax sent text messages to Plaintiff Butkus and putative FTSA Class members intended to encourage the purchase of various good and services including paid subscriptions to Newsmax's website and thus were "telephonic sales calls." Newsmax's services are "consumer goods or services" within the meaning of Fla. Stat. § 501.059(1)(c)

59. Newsmax, as the entity placing the telephonic sales calls or causing them to be made, is a "telephone solicitor."

60. Plaintiff Butkus and putative class members requested Newsmax to stop sending them telephonic sales text messages, but Newsmax continued.

61. Newsmax's continued text messages to Plaintiff and putative class members after they asked Defendant to stop sending the text messages violate Fla. Stat. § 501.059(5).

62. Each member of the FTSA Class has constitutional standing as, by definition, each member expended the time and effort to ask Newsmax to stop, yet continued to be sent text messages, invading their privacy, further wasting their time, and constituting a personal nuisance.

63. For violations of Fla. Stat. § 501.059(5), Plaintiff Butkus and putative class members are entitled to $500 per text message in statutory damages. Fla. Stat. § 501.059(10)(a).

64. Plaintiff Butkus and putative class members are entitled to $1,500 per text message should the Court find the violations willful. Fla. Stat. § 501.059(10)(b).

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays that judgment be entered against the Defendant as follows:

A. An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

B. Injunctive relief prohibiting such violation of the TCPA and FTSA by Defendant in the future;

C. Statutory damages of $500.00 for each and every text message in violation of the TCPA and FTSA;

D. Treble damages of up to $1,5000.00 for each and every text message in willful and/or knowing violation of the TCPA and FTSA;

E. An injunction requiring Newsmax to comply with 47 C.F.R. § 64.1200(d) by

    1) maintaining the required written policies;

    2) providing training to their personnel engaged in telemarketing;

    3) maintaining a do-not-call list;

    4) and such further and other relief as the Court deems necessary.

F. An award of attorneys' fees and costs to counsel for Plaintiff and the Classes; and

G. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: March 11, 2025

Respectfully submitted,

By   */s/ Sergei Lemberg*
Sergei Lemberg
Fla. Bar No.: 1026228
LEMBERG LAW, L.L.C.
1155 Heron Bay Boulevard
Suite 200
Coral Springs, FL 33076
Email: slemberg@lemberglaw.com
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*